to tell you how much time you have left. The amber light goes on when you have two minutes and the red light goes on. Kind of complete your your thoughts unless we have further questions. After 45 seconds the trap door opens and you go down to the basement. No, just kidding. I said that before and some lawyers got really shook up and thought that was really a trap door that opened up but there is no such thing. The first case of the morning is United States of America v. Francisco Javier Sanchez-Villarreal and first we'll hear from Ms. Gassman. Good morning. May it please the court. Kayla Gassman for the appellant Francisco Sanchez-Villarreal. The district court in this case erred when it denied a mitigating role adjustment to Mr. Sanchez based on its conclusion that he played a critical role in the criminal activity. Amendment 794 to the guidelines, which is a clarifying amendment that does apply on direct appeal, makes clear that whether a defendant plays an indispensable or essential role is not a determinative factor in the mitigating role analysis and that instead the court should assess the relative culpability of the participants here because the court relied primarily on the critical role determination. It did not apply the right legal standard and the case should be remanded to the district court for it to apply that standard to the facts of the case. With the time I have this morning, I'm going to address various subpoints related to the mitigating role issue and then end by addressing the Rule 35 resentencing issue. First with regard to Amendment 794, it is clear this court can consider amendments that became effective after sentencing if they are meant to clarify the application of a guideline and rather than intended to make some substantive changes. Here, according to all the factors, or most of the factors, that this court has found to be important in determining whether an amendment is clarifying, this amendment is. First, and I think perhaps most importantly, I have not found any circuit that has said that it isn't. Obviously, this court has said a couple of times that it has pre-terminated that issue and said it was unnecessary to reach, but three circuits have said it is clarifying and I have not found any. Were there dissents in any of those cases? I don't believe so. Did you preserve that, the specific 794 amendment objection here? So I actually strongly dispute that it was necessary to specifically raise the amendment to the district court to preserve the mitigating rural issue or to avoid plain-error review. I actually have not found cases involving clarifying amendments where the court found the amendment to be clarifying, but then conducted a separate plain-error analysis to determine whether or not the trouble was there. Roberts. I mean, her statement is a little hard to conclude which way she's got concerns about the Guidelines 4. I really, the more you read it, the more I was unsure whether she was saying she disagrees with the amendment or the logic behind the amendment or the opposite. So she is the district judge, I say she, but okay. So to the extent she's saying being a critical but-for component of the conspiracy means you can't have a real reduction, that would be inconsistent with 794. But if it's really you haven't really told me that this guy's a mule, I'm not going to believe it. But if she's saying he's a mule, as you're saying he is factually, then that objection, which seemed to be what was being urged to her, wouldn't embrace that she's got a legal error issue. Well, what I would argue is the argument that was made to the district court is that Mr. Sanchez was entitled to a mitigating rural adjustment because he was substantially less culpable, relying on pointing to facts in the PSR about this person known as Jabaro, who is the person who hired him, paid him, directed him. So that person, more culpable, understands more about the scope of the activity, all of the factors that Amendment 794 talks about. Then the Court denied the mitigating rule. I do think she made a legal error. I agree with you, I think, Judge Higginson, in that the more you read it, it's a little unclear exactly what her disagreement with the guidelines is. I think it's a little bit beside the point, because the argument raised to the district court is factually he's entitled to it. The argument that I'm making is factually he's entitled to it. But even the last, just a quick question on this. Even under 794, or just a factual characterization of him as a mule, isn't the fact that this guy admitted that he had his own baggies, he was a trafficker himself, wouldn't that, under any law, mean that she could say he's not just a transporter, he's got a proprietary interest? Well, first I would point out she did not say that. She did not discuss that. She didn't say it, but that was … And there's no facts other than the bare admission from him that he was going to sell that, those baggies. There's no facts about who he was going to sell it to. There's no facts about, wait, was he going to sell it to his, you know, cousin down the street? I don't think there'd be a case, maybe I'm wrong, where we would reverse a denial of a role reduction if the alleged mule transporter was also profiting or admitting that he was a trafficker. I agree that's a factor here. I think the thing that I don't want to lose sight of is that the district court actually applied the wrong standard. I know. So those factual findings, I think, are not appropriate for this court to make. Even for a harmless error type analysis? I don't think so, because what she discussed was the critical role. Okay. And, you know, she even discussed the fact that he had made a previous trip, but even that discussion came in the context of discussing the critical role. And I think actually what is helpful, if you look to the cases that the Commission cited in the reasons for amendment, for the reasons for this change or this clarification about the essential or indispensable role, those cases conduct the same analysis that the district court did here. Let me ask you about, you said it's, you don't think it's plain error review because you did object, you did seek the minor role adjustment and make that factual argument, but your argument to us is she should have, what the district court's ruling was inconsistent with this clarifying amendment, and you never addressed the clarifying amendment to her. Isn't the whole point of preservation to give the district court the chance to correctly apply the law in the first instance to prevent errors from happening so that we have all these appeals, and she just didn't, there's no indication that there was any consideration of this clarifying amendment below, is there? There really is not. There's nothing in the record that indicates that the amendment was presented to her or that she was reviewing the amendment or was aware of the amendment. Aware of the amendment. You know, I do think that, you know, the cases, this Court's cases about preservation of error have made clear that, you know, when the issue is presented to the district court and the district court has an opportunity to rule on it, that should be sufficient. Even, I would point out that the case that the government cites to argue that this objection was not specific enough, it's a case called Neel, and in that case, even the court said if the objection is written, is preserved, and the written objection is to the PSR, even if then at sentencing the district court misconstrues it or misses part of it, you are not then required to take further exception to that ruling to preserve the issue. So, and I think the only case that I found that implies or suggests that plain error might apply in a situation like this is Gomez-Valle, which, again, does not decide that plain error applies, but suggests that it might and then doesn't decide the issue. But the case that Gomez relies on is a case called Sanchez, which involves very different circumstances where there actually was, at sentencing, there was no guideline applicable to the type of offense. It was, I think, a sex offender registration offense. There was no guideline at the time of sentencing. There was a proposed guideline that then became effective after sentencing, and this Court applied plain error review to that situation. It did not assess whether that amendment was clarifying or substantive. I think if it had, I think it would have had to conclude it was not clarifying, but still found plain error in the district court's failure to consider the proposed amendment because that amendment was a statement from the sentencing commission. But that new guideline had never been addressed to the sentencing court at all, which I think is very different here where the mitigating role guideline was presented to the district court, all the facts were presented to the district court. It's just that now there's additional clarifying law. Can you agree if the clarifying amendment had been presented to the district court? I mean, we wouldn't have all this confusion. She either would have said, oh, my gosh, I'm wrong, I shouldn't have relied on the mitigating role, I'm going to give him the adjustment, or she said, oh, well, yeah, I shouldn't rely on that factor, but there's all these other reasons why I don't think he should get the mitigating role. I mean, it's — Yeah. I mean, it could have cleared up some confusion on appeal, but I do think it's also important to remember that a clarifying amendment clarifies what the guideline was intended to have meant all along, so it clarifies how it should have been interpreted from the beginning. Remind me, did the PSR say he should or shouldn't get the — The PSR said that it did not appear that a mitigating role was warranted. And then did he object to the PSR? He did object to the PSR. He didn't cite 794 then? He did not cite the amendment. So the probation office missed it, too, but it had already been promulgated. It had — no. What had been proposed, it was not yet in effect. So this sentencing, I think, happened in August or September of 2015. Because when she says, well, it's critical, and in that sense I disagree with the guidelines, there was a little bit of me was thinking that maybe she knows 794 and she's speaking about disagreement with that, but there's no way to know. There's no way to know. I think that would be speculation. Certainly it's possible. But probation did not point it out, and no one specifically addressed 794 with her. I think with the time I have left, I mean, I will rest on my briefs, I think, on the harmless error point, unless the Court has concerns, except to point out that the government hasn't contended that if there was error, that it was harmless. I'll turn briefly to the Rule 35 resentencing issue. Obviously, I did submit a 28-J letter about this Court's opinion in Olarte-Rojas, which came out after briefing. But in reviewing the Court's questions to counsel ahead of time, I do actually now think there may be a way to distinguish Olarte-Rojas. So we do want to present that to the panel for your consideration. Let's say you do distinguish it. So there isn't 3582 authority. What would the relief be? The relief, so I think you have to consider both issues together. I think if you agree with me on the minor role issue, I think there's no need to reach the Rule 35 issue at all. Except if you were to say it's jurisdictional. The district court didn't have authority to correct the sentence. Did have authority? Did not have authority. Did not have authority. It isn't clear error under Rule 35. Then the appeal from that written judgment, some of our case law would suggest that we would have to dismiss the appeal, and I'm not sure then what would happen. There would be no written judgment, but there would be an oral judgment. But the oral judgment would be the earlier one that she corrected. Right. So the cases that I found, which are the cases that are in the brief, Ross, I think Lopez, where this Court found there was no Rule 35 jurisdiction to resentence, vacated the sentence and remanded for reimposition of the original sentence. What's the original sentence here? It's not one you like. It is not one we like. So, you know, that's why I think the Court would still have to address the minor rule issue, because the minor rule issue goes to the Guidelines calculation, which was an error that came even before the district court's initial sentence, the 135 sentence. I think that's still an objection that was made. It's still an objection that was preserved. So my position would be the Court does have to address the minor rule issue regardless of what it thinks about Rule 35a. The other scenario would be the, it would go back, judgment would get interim the 135 months, and then you could appeal that again? Sure. I mean, I think that's a possibility. I think there are some cases, you know, involving situations where a lawyer didn't follow the client's instructions about an appeal, like filing an appeal, and that the Court has done something like that, where it just remanded for reimposition of a judgment to essentially restart the time for filing an appeal. I suppose that's a possibility. And we certainly would not be opposed to that if that's what the panel wanted to do, so long as there was either this Court addresses the minor rule issue or there would be a subsequent opportunity to appeal the minor rule issue, because we do still think that that's an option. What's your recommendation, having read? I'm sorry. No. Go ahead. I'm just wondering, now that you say you've looked more closely at Olarte, what do you think is, spell out exactly what the relief is you're asking for? So the relief that I'm asking for on both issues — But put aside rule reduction. Putting aside rule reduction, well, the only remedy that I've been able to find in the case law, of course I'm open to being corrected, is to remand for reimposition of the original sentence. I have not found authority. But don't you see that's a problem? Reimposition, you mean reinstatement. Reinstatement. But we would have to be going from an oral sentence that said, I don't want to go below low end, I want middle end. There would be no 135 judgment. The district court's oral sentence says you're getting it above the low end. Well, I think that — So we wouldn't say to her, now impose that. Well, but what this Court has done, when it has found there's no jurisdiction to resentence under Rule 35a, is essentially like a correct the judgment. So there's an oral pronouncement that said one thing, there was a later oral pronouncement that said something else, and then the written judgment included the second sentence. But the oral controls. So you would be getting — you would not get 135. We wouldn't know what to impose. But she announced a 135 at the — in the first oral position. She said — I mean, I understand that that may be surprising. It wasn't clear enough for anyone to object at the time. But she did state that the oral — the sentence was 135. Why isn't it a little cleaner if we just say you didn't have authority, this isn't the type of clean error. So go back and resentence, and now you know 794. So factor that in. Just do the whole thing. That is my recommendation. That is your recommendation. But you asked me — I did. You're right. Okay. So in your mind, resentencing, full package open, she can do it all right. You put 794 right to her, and we'll see what happens. Right. Interesting. Okay. Does — under Rule 35, is this a technical error? Or does it fit that definition? Or where does it fit in to give her authority to go back and fix it? I mean, does she have authority to go back and fix her error? Right. So in reviewing the cases again, I don't think she did. I don't think imposition of sentence is a technical error. She announced what the sentence was. She said it's 135 months. I do agree it might be a little bit surprising given what she said just prior to that. But I don't think it was something that was so clear. For example, it's not the kind of mathematical error at issue in Olarte where you can look at the face of the record and see, oh, there was a math error. We can fix that. We can plug in the right numbers and see what it should have been. Here, the error was only in the judge's head. One other. If the test is that a district judge can't reconsider, have misgivings, but instead it's got to be obvious enough error that we would reverse, wouldn't the government have been able to appeal her 135 if there were no grounds given to depart downward and the only oral statement was I want to go to the middle? I think the government could have appealed. I think the government did not object. So I think the review would have been for plain error. And I think it is, I would argue it is fairly difficult to get a plain error reversal on the district court not giving enough reasons for the sentence. It's certainly not an error that's clear enough that it obviously would have required remand, which is what the Court has said the standard is. Thank you. Ms. Wilson. May it please the Court. The sentencing here occurred six weeks before Amendment 794 became effective. Regardless of the standard of review, regardless of Amendment 794, the government believes that the record supports the district court's mitigating adjustment or the lack of the mitigating adjustment here. It's a fact-intensive inquiry. What is the government's position on whether it's a clarifying? On whether it's a clarifying? The government has taken the position in other circuits that it is a clarifying amendment. Aren't you supposed to take the same position? I am. And I checked with D.C., and so I am allowed to say that. But you've checked with D.C. recently because there's a new boss as of yesterday, I think. Well, I checked on Monday. So you can call him, but I don't think I'll call my new boss. And I think the brief treated it as though it was a clarifying amendment. But regardless of whether we're pre or post 794, it's a fact-intensive inquiry. And 794 did not strip the district court of its discretion. What it did is provide additional guidance. But that guidance was not exclusive. And so what we had here is we have a very experienced judge who sits on the Mexican border. She knew Sanchez was transporting a large amount of cocaine. It translated into just above 10 pounds of cocaine. That's a lot of cocaine. She knew he had a history of drug trafficking. He had three other convictions preceding this one. And he was involved in the same transaction a month earlier. And she said as much. And it involved the same person, the Chaparro. He had gotten the drugs from and he took them to the same individual. And it's undisputed that the amount was basically the same. Where they challenged it was on a purity issue, which is unrelated to this. More importantly, she knew both from the PSR and from the addendum following his objection that he had been given a gun. That was loaded. And he had 19 rounds of ammunition for his protection. Also, as I believe it was Judge Higginson said, he was also keeping four bags of drugs to sell separately. I'm sorry? Those are all very powerful factors. And if we're just coming up with her having done that balancing, I don't think there's much circuit law that would say we'd ever change it. The trouble is when you look at her language, and you know it, when particularly using the very word critical and then not mentioning gun and not mentioning that he had his own bags, in that just first it's hard for me to know really that she was basing it, the rule of reduction of denial, on what you're saying as opposed to he's critical. If he weren't there, the big guys wouldn't be able to do it. And that is 794. Well, first, she was hesitant to use the word critical, as you know. And she says, I'll go ahead and use it. Right. But she was hesitant. The other thing is we clearly had a judge who was prepared. And if you look a page or two later, she was very familiar with the entire record. And there are cases where the judge, there are many cases where this Court gives a judge the benefit of the doubt in knowing the PSR, knowing the addendum, and all of that. But that does not usually make such a pointed, apparent, if you're commendably acknowledging the government sees this as clarifying and retroactive, what would be the case that would say even if she made legal error, it's harmless? What's your best case for that? Well, I don't know. You know, the situation is a little bit different because what happens here, you have Torres-Hernandez and you have Castro, right? And those were both transportation cases. I realize one was in a backpack, one was something else. But in those situations, under those amendments, under, excuse me, under 794, this Court found that the amendment did, excuse me, not the amendment, but the mitigating rule adjustment did not apply. And what's important to remember here, it was the defendant who had the burden of proof. And he had to prove two things, right? He had to approve, he had to prove the average participant in his drug trafficking organization, not the greater universe, which is how the defense was arguing it during the sentencing hearing. The defense was arguing the standard mule, and he typically does X, Y, and Z. That's not the test. The test is you have to look at this particular drug organization. And then secondly, Sanchez was responsible for showing he was less culpable than the average participant in that group. And he didn't do that. In 794, as this Court has interpreted, in Torres, I mean, excuse me, in Castro most recently, you don't have a right to a mitigating rule adjustment just because you're not the criminal mastermind. And the judge recognized some of those things, saying, I realize essentially that you're not the top dog. But that doesn't change the fact that he was caught with all this information. And the judge was trying to or the judge specifically said later that she was trying to be clear on explaining how she was sentencing him because of the 24-month disparity, which she says later. So if you take that all within context, the judge wasn't just singling out his, quote, critical role. She was familiar with all these things. And if this Court or 794, what have you, wants a judge to go into great detail about why you're not giving a mitigating rule adjustment, then the Court needs to say so. But ---- Are you saying or are you arguing, are you saying that this individual was more than just a drug mule? I mean, that there was evidence to show that he was more than just someone who didn't know what was going on and was paid to carry this stuff around? Well, I think that the evidence showed that he had a clear understanding of the drug trade. When you add all of these things up together, we can easily say he was just a transporter or a courier if we single out that he was caught in a vehicle with drugs in his car. I mean, that's kind of an easy thing to say. But you have to look at the big picture. It's a factually intensive inquiry. And here what we have, as I said before, is he had the extra bags. He had done the exact same thing a month before. He was ---- he had prior drug convictions, which adds to ---- I realize it has to be within the universe of this particular one, but it shows that he has savvy about this type of thing. And he was ---- he had the gun for his protection. Somebody had given him to borrow or somebody had given him the gun to do this transportation. It wasn't just like the fellows, I believe it was in Torres Hernandez, who would cross the Rio Grande and had some backpacks with drugs. This guy had a lot more. And the judge was keenly aware of that. And as I said before, Judge Alvarez is on the border, so she sees these types of cases frequently. And as I also said before, it was his burden to prove the entitlement to the adjustment. And if you look at the standard, whether plain error or plausibility in light of the this Court's precedent and the comments at sentencing. Roberts. So just so I understand, you're ---- you're ---- you're ---- if you were writing this or recommending how we write it, your position, we could say there's no legal error at all because the amendment's not retroactive. You're not pursuing that. We could say it is legal error under 794, but it's not plain error because they didn't object, or it is legal error, but it's harmless because there's no clear error in her assessment of the mitigating. Or is there a different door you're recommending? Well, I'm recommending that there is no legal error whatsoever. I mean, I think there's no error. But she complied with 794. Those statements are consistent. I believe that it is. Those, again, those factors are not exhaustive. And what the Sentencing Commission was trying to do ---- But if we do think it's inconsistent with 794, then what's the government's argument? If it's inconsistent with 794, this Court has various options to it, which are obviously coupled with the 35A issue, right? A little bit. But tell me the option you think would be the way to go. Well, I think that if the Court believes that plain error applied, and then it could find that certainly the fourth prong would not be satisfied, because it doesn't shock the conscience, right? And the third prong is a little more problematic, because obviously when you have a difference in a sentence, which of course the two-level would be, or two, maybe three, four levels, I don't know what it would be. I agree with your analysis. Go jump to the last one, which is we do think legal error. We do think it was preserved. Okay. So then we would be in harmless? Is that what you're asking? I'm asking you where we would be. Well, I think as we said in the brief, it would be plain error, but alternatively it would be a clear error situation. So then you would be into harmless error, which for the reasons I said in relation to the third prong is more problematic. I mean, the judge did not say I'm imposing an alternative sentence, and here's why, and gone through all the, those types, the ABERA and those types of cases. And I recognize that. Yes. Thank you. So, but the other issue, of course, is the 35A. And the cases are somewhat interesting, because if you look at Meza and some of the cases, the sentencing judge pounds the gavel, right? Because in Meza and some other cases, including cases I've looked at throughout the United States, if the hearing is still ongoing, it seems as though the judge has some freedom to do what he or she wants. Where the gavel goes down and the defendant leaves, it seems like then the 35A curtain really comes down and courts become much more forceful about applying the narrow standard. This case is very different from most of those cases. In some of those cases, you have a situation where a judge made a mistake, and maybe if the government, you know, because the government mistakenly led the judge into believing that there was not a mandatory minimum, and there was, or there was a guideline calculation. Or something, let's just say, arithmetic, right? That something had been misapplied. In other cases, you have a judge who changes his or her mind. 60 months, no, I think it should be 70 months, or I think the sentence should be more reasonable, or not reasonable. That's not the case here. The judge repeatedly said at the second hearing that she had misspoken, that it was 20 months. And when you look at what she said leading up to it, it does say that. I mean, it does, or it supports what she's saying. Of course, she does say something entirely different, right? She says 20 months below what she was looking at. And so then it becomes, is this a technical or other clear error? Because I don't think we can say it's an arithmetic. There's never, there was never an issue about the calculation. Nobody ever said that. Alarte is an arithmetic case, right? That's correct, as are many others. So what is it? Is this a technical error? I think, you know, I looked at a lot of cases. I have not found anything that is just like this one. It's different. We have a situation. It's called a verbal typo. I'm sorry? Verbal typo. Yeah, actually, I didn't write the brief, but I thought that was pretty clever. But it is. If she said 155, but the stenographer just got it wrong and wrote down 135, that would be typo. Even maybe Rules 36 could correct it. Yeah, I understand. So you're saying it's like that. This case is just very, very unique for the reasons I said, because it's post-gavel, but it's the same day, right? The defendant presumably hasn't even left the courthouse. Maybe he has. I don't know. It's not in the record. And in Meza, this Court put some emphasis that it was the same day. But in Meza, the defendant had not been allowed to leave. And here we have a sentence. I do think because the gavel went down, the hearing ended, the defendant left the courtroom. You do think it's a resentencing and it's just a question of whether it's technical or clear error or somehow fits within 135. Well, I call it the gavel cases just because I think it's easy to differentiate those cases, because they don't always talk about 35A. They more or less treat it as a continuing hearing or one hearing and not get into 35A. Sometimes the courts weave 35A in, but really it seems to be a gavel situation where the defendant is taken away. Here you're saying it's obvious and it's the equivalent of technical because it's the oral pronouncement was inconsistent with itself. That's correct. And so it becomes, do you, the Court, believe, because this case is unique from what I can tell and I've looked at a lot of cases, it does this Court believe that that either applies as a technical or other clear error, because she's not reexamining her sentence. She's very clear. She's not reconsidering or reevaluating it. I mean, obviously it may be the situation. She's busy, sees a lot of cases. But the rule would undo itself if it were just the district court saying, I'm not rethinking it, but giving no other reasons. That would allow for misgivings and reconsideration. So it can't just be, I'm not rethinking it. Well, with all due respect, I think most district court judges are much more conscientious than that. I don't think they would take advantage of that, per se. I mean, the cases say where the judge says, well, I've reconsidered. I think you're about, you know, a worse guy than I thought you were, so you're getting extra this or that. That's not the situation. If she didn't have the authority, then where are we? Obviously, you heard us ask a lot of questions, and so let's just assume for a minute it isn't an Olarte situation. It's unique, but we think it doesn't allow for Rule 35 correction. Well, in Ross, what you did was you vacated and reinstated. But what's problematic here, now you get back to the mitigating role adjustment, right? You just can't give them a 135-sentence, 135-month sentence. That's correct. When you say vacate, reinstate, reinstate what? Well, in Ross, they put in the first sentence, if you will. Oral first sentence, or there was a judgment before the second? I believe it was. Most of those cases, from what I see, always talk about the oral pronouncements, because they're finding So we go back through the oral record and figure out what we think it was.  Can you say that one more time? So following Ross, we would now look back at the transcript of the sentencing and say, we think this is what she meant, even though there's blurriness. Are you talking about the 135 or the 155? When you're looking at the transcript of the blurriness. If I were to say, you didn't have authority to issue the judgment that you issued, and therefore I'm following my precedent, and it says we're going to reinstate the oral sentence, the controls, it is a little hard for me to know what that oral sentence would be, because she says sentences before the 135, she says I'm going mid-range. Yes. So they're impossible to reconcile. Well, and I also, you know, those cases, when you read them, not just in this jurisdiction, but elsewhere, they don't really talk about the judgment, the written judgment. They focus on what said the first hearing and what is said the second hearing. Now, what she was, I don't know if she was careful to say or she was just emphatic about her mistake, is she kept saying my intention was this and I misspoke. She never alluded that it was a resentencing. Now, I realize the difference. Does the record reflect how it was brought to her attention that she misspoke or whatever? It was to Esponte. Okay. She, on her own, it wasn't like the probation officer came up to her afterwards and said, Judge, I think you messed up here. She said it was brought to her attention. But it doesn't say who brought it to her attention. No. But after the — I think the hearing dismissed at 9 — I'm sure it was not the defense lawyer that — But the hearing ended at 945, and they were back in court at 2 o'clock. Now, I don't know when she realized it. I don't know if there was a problem bringing a defendant back or if people had lunch. We don't know. If you had all the law, what would you say that we should do if the district court didn't have resentencing authority? Well, I think the court has two choices, right? First, it could address the MRA. So — excuse me, that's what I called it — the mitigating role adjustment, so that down below, that issue's been taken care of. Either has it or, you know, I mean, if you're going to find that that was error or whatever, then that can be discussed in a resentencing. If you remand for resentencing, obviously the mitigating role adjustment goes out the window, right, because it's a full sentencing. And so, in a sense, right, that's the easiest thing to do rather than grapple with a lot of these issues, whether it's clarifying and, you know, 794. I think — The sentence of 135 is within the — right in the middle of the guideline range you would have with the minor role adjustment, right? I think it would be 120 to 150, the range the defense is asking for. 135 is in the middle of that. That's speculative on our part that the judge would do that. Again, you know, the judge — I believe the record shows that the judge followed the applicable law and made the mitigating role adjustment. But if we said the sentence she has to stick with the 135 because that was what was orally pronounced, in all likelihood, and that's 20 months below, I think what everyone agrees she really intended to, so it's hard to believe she's actually going to end up going below that even if she finds a mitigating role adjustment. Right. I understand Molina-Martinez and all that law out there. Right. But we don't know that. If we sent it back and reinstated the 135, would the government's appeal clock start? Well, you would have a new judgment, so yes, then we'd have to determine, right, whether or not the government thought that was reasonable. But one thing you have to remember here is the defense did say the government should have objected and whatnot, but I disagree with that characterization, and here's why. While the judge said some things leading up to what you would have thought would have been a higher sentence, the government wasn't going to challenge the reasonableness. That's not what this case is about, whether the sentence is reasonable or not. What the case is about is the judge's misspeaking and then the court's intention. I just think the reasonableness is just not applicable. So unless the court has any other questions, we request that you affirm. Thank you. Just to start with, to respond to what the government said about all of the other facts that the judicial court could have found about the mitigating role but didn't, I just wanted to reiterate I think that it's inappropriate for this court to make factual findings that the judicial court didn't make. Even if this court thinks there may be facts that the judicial court didn't discuss that would cut against giving a mitigating role, the judicial court did not in fact find those facts, did not cite to those facts, did not discuss those facts in denying the adjustment. And I think that distinguishes this case from Torres-Hernandez and Castro. In those cases, Amendment 794, the judicial court actually had the factors in front of them, and so those facts were considered in light of 794's direction that the essential role is not determined. If we send it back, could the court consider those facts and say, well, you know, I've considered them and I still don't think he deserves a mitigating role? She may do that. But on this record, it is not clear that she would do that, and that's the problem. And also in Torres-Hernandez and Castro, the comparisons being made were between people of essentially the same role. So, for example, Torres-Hernandez, he was a backpacker, and his culpability was compared to other backpackers. They all had — they were all carrying drugs. They were all held responsible collectively for all the drugs. Castro was a driver. Same thing. She was compared to other drivers. Here there actually is evidence of someone who is far more culpable than Mr. Sanchez, and Chaparro was the person who directed him, who hired him, who paid him, who had more knowledge about the scope, who had more role in planning. So that, I think, is a very important distinction between this case and Torres-Hernandez and Castro. I did want to just briefly point out the objection in the district court about the average participant did correctly state the standard that the comparison is between the defendant here and the average participant in this particular criminal offense, not to some hypothetical average participant. So if you look to the written objections to the PSR, which are on page 210 of the record, the objections do lay out the appropriate comparison is just to the other participants in this offense. And on — just briefly on the Rule 35 issue, I know, Judge Higginson, you've had some questions about what the sentence — what sentence would be reimposed. And I think I understand what you're saying in that reading what the district court said leading up to that sentence, then announcing the 135 is surprising, but it is, in fact, the sentence that she announced. So there is a sentence that was orally pronounced. I think if this Court did decide that — if you don't agree with me on the minor rule issue, if you did decide she did not have the jurisdiction to then bring him back in the afternoon and re-sentence, I think that 135 is the sentence that was orally pronounced on the record that would then be reimposed. That's — Do you agree it's a verbal typo? I mean, it seems to me it happened because she obviously said she wanted to go within the guidelines. She's reading, then, you know, probation gives you this summary of what to read. I mean, a 5 can look like a 3. I mean, I think that's probably what happened. Did you agree it was a — she just read the actual sentence wrong? I don't know what she did. I mean, I do agree that reading what she said ahead of the sentence, it was then surprising that she would go below the sentence. I don't think it's clear exactly what happened. I think that the only way that we know that it was a misstatement was because then she brings him back later and says that it was. And it's not that I — But she was unequivocal. She wasn't going to go below the guidelines. So how could the 135 be consistent with that? Again, it was surprising, but it wasn't something that was so clear that it made anybody jump up and say, hey, that's a downward departure that you haven't given a reason for. It was not what was expected, but it was what was orally pronounced. And I don't think it's something that's clear enough that it's clear to me that obviously this Court would remand if that came up on appeal. On the verbal typo issue, I do understand why it's sort of a nice phrase and it's like a nice analogy to make. I do think there's something different that's about the substantive oral pronouncement of a sentence, that it's not a technicality. This is not a technical thing. Yes, she gave reasons, but then when she said, here's the sentence that I'm giving you for how long you're going to be in prison, that is a very serious pronouncement. It's not something that's just a technicality. For example, it's not like she announced 155 and then the court reporter miswrote it. That's not what happened. When she actually announced the sentence, she said that it was 135. I think that's not a simple typo. If the Court has no further questions, I would ask that you vacate the sentence and remand for re-sentencing. Thank you. Thank you.